**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| AMADO F. CANO, | ) | NO. CV 14-4397-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on June 12, 2014, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on July 30,

2014. Plaintiff filed a motion for summary judgment on November 17, 2014. Defendant filed a cross-motion for summary judgment on December 17, 2014. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed June 19, 2014.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since January 31, 2011, based on alleged back problems resulting from a work-related fall (Administrative Record ("A.R.") 33-37, 176-77, 188, 210, 213; see also A.R. 280, 291-96, 305-12, 317-24, 331-44, 348-437, 520-21, 542, 554-61, 563, 565-68 (Plaintiff's related medical records)). The Administrative Law Judge ("ALJ") found that the following medically determinable impairments, in combination, are severe: "degenerative disc disease and spondylolisthesis of the lumbosacral spine with facet hypertrophy and foraminal narrowing [A.R. 291-94, 377-78], an abdominal hernia [A.R. 269], a retained bullet fragment [A.R. 279], an adjustment disorder [A.R. 525], and alcohol abuse [A.R. 526]" (A.R. 11-12). The ALJ also found that, despite these severe impairments, Plaintiff retains the residual functional capacity to perform a reduced range of light work. Specifically, the ALJ found that Plaintiff:

> [can] lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday. He can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel,

2

```
       crouch and crawl.  [Plaintiff] must avoid concentrated
       exposure to extreme cold, and hazards such as unprotected
       heights, heavy machinery, and uneven terrain.  Mentally,
       [Plaintiff] can perform simple repetitive tasks that do not
       require public contact.
```

(A.R. 15, 22 (adopting opinions of non-examining State agency review physicians at A.R. 75-79, 87-97)). The ALJ found Plaintiff could perform certain light work jobs that exist in significant numbers in the national economy (A.R. 24 (adopting vocational expert testimony at 63-67 that Plaintiff could perform the jobs of "marker," "production assembler" and "electronics worker")). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).
///

```
 1          If the evidence can support either outcome, the court may
 2          not substitute its judgment for that of the ALJ.  But the
 3          Commissioner's decision cannot be affirmed simply by
 4          isolating a specific quantum of supporting evidence.
 5          Rather, a court must consider the record as a whole,
 6          weighing both evidence that supports and evidence that
 7          detracts from the [administrative] conclusion.
```

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

**I.    The ALJ Materially Erred in the Evaluation of the Evidence.**

On January 31, 2011, Plaintiff fell at work (A.R. 379). Worker's compensation physician, orthopedic surgeon Dr. Ralph Steiger, treated Plaintiff monthly from July of 2011 through at least October of 2012 (A.R. 280, 295-96, 317-19, 322-24, 360, 364, 379-80, 556-561, 563). Plaintiff had been off work due to his injury prior to seeing Dr. Steiger (A.R. 381-434).

On initial examination, Dr. Steiger noted that Plaintiff was using a cane,[1] and had an antalgic gait on the right side without his cane (A.R. 317). Plaintiff reportedly had difficulty with heel

---

[1] Plaintiff's prior treating physician prescribed the cane on February 6, 2011 (A.R. 421).

4

walking and had a limited range of motion (A.R. 317-18). Plaintiff also reportedly had hypesthesia (reduced sensation)[2] medially in his right leg and foot, weakness in his left extensor hallucis longus muscle, pain on straight leg raising sitting and supine, and positive Lasegue testing (A.R. 318). Dr. Steiger opined that Plaintiff could return to modified work involving no heavy lifting, no repetitive bending or stooping, no repetitive twisting, no prolonged sitting or standing, and no heavy pushing or pulling (A.R. 280, 296, 317-320). Dr. Steiger's opinion that Plaintiff could work with these accommodations remained the same throughout the course of treatment (which involved pain management, referrals to other specialists, and physical therapy) (A.R. 296, 322-24, 360, 364, 556-61, 563).

In November of 2011, Plaintiff reported that his right leg gave out, causing him to have to catch himself from falling, and also causing spasms across his back and down his right lower extremity (A.R. 323). Dr. Steiger observed diminished sensation in Plaintiff's right medial leg and foot (A.R. 323). Plaintiff was awaiting a lumbar spine epidural for his pain (A.R. 323; see also A.R. 338 (January 18, 2012 injection record)). In December of 2011, Dr. Steiger indicated that Plaintiff used his cane for ambulation due to right leg weakness, and Dr. Steiger prescribed a replacement cane (A.R. 324). Plaintiff presented with a right antalgic gait and balance problems standing with his feet together (A.R. 324). In January of 2012, Dr. Steiger

---

[2] The Court derives the common definitions for medical terms herein from the record or from the Merriam-Webster Medical Dictionary, available online at http://www.merriam-webster.com/medical (last visited January 16, 2015).

indicated that Plaintiff used his cane for support (A.R. 364). Dr. Steiger requested a neurological consultation and possible treatment for Plaintiff's ataxia, leg weakness, and balance problem (A.R. 364).[3] In March of 2012, Dr. Steiger indicated that Plaintiff was still using a cane for assistance with walking (A.R. 558). In May of 2012, Plaintiff reported that his right leg gave out causing him to fall (A.R. 560). Plaintiff evidently had abrasions on his head from the fall (A.R. 560). Dr. Steiger indicated that Plaintiff has difficulty walking and falls "in spite of the use of a cane" (A.R. 560). Dr. Steiger requested authorization for a brain MRI per Dr. Zardouz's recommendation (A.R. 560). There is no evidence in the record that Plaintiff has had a brain MRI.

In November of 2011, State agency physicians, Drs. R. May and S. Rahman, reviewed the available record and found Plaintiff then possessed the physical residual functional capacity the ALJ later adopted. See A.R. 70-79 (Disability Determination Explanation stating that the "TP MSS [Treating physician medical source statement from Dr. Steiger] is consistent with objective findings," giving "controlling"

---

[3] Neurologist Dr. Bijan Zardouz examined Plaintiff in February of 2012 (A.R. 348-54). Plaintiff was ambulating with a cane and reportedly could not do forward bending or deep knee bending, could not put his feet and legs together or close his eyes and touch his forehead because he reportedly felt like he was going to fall backwards (A.R. 351). In light of Plaintiff's lumbar spine MRI which did not show any major disc bulges and Plaintiff's negative electrodiagnostic studies, Dr. Zardouz recommended that Plaintiff undergo a brain MRI to rule out any brain abnormality as the cause of Plaintiff's balance and gait difficulties (A.R. 353; see also A.R. 305-12 (electrodiagnostic study reflecting no difficulty with gait), A.R. 313-14 (lumbar spine MRI)).

weight to Dr. Steiger's opinion, and also stating that there were no medical source opinions more restrictive than the State agency physicians' findings). There is no mention in the State agency physicians' initial Disability Determination Explanation of Plaintiff's use of a cane.

On reconsideration in February of 2012, State agency physician Dr. C. Scott purported to express agreement with the Administration's prior determination, finding the same physical residual functional capacity. See A.R. 81-97 (Disability Determination Explanation). Dr. Scott reviewed Dr. Zardouz's neurological report from February of 2012 and found no reason to change Plaintiff's assessment (A.R. 88). Unlike Drs. May and Rahman, however, Dr. Scott opined that Dr. Steiger's medical source statement was "<u>not</u> fully supported by evidence in file" (A.R. 90) (emphasis added). Dr. Scott characterized Dr. Steiger's medical source opinion as <u>more</u> restrictive than Dr. Scott's findings, and asserted that the "opinion is without substantial support from other evidence of record, which renders it less persuasive" (A.R. 94-95).[4] Dr. Scott did not acknowledge or explain the discrepancy between how the other State agency physicians

---

[4] Dr. Scott also found not fully supported by the evidence the orthopedic consultative examiner's opinion that Plaintiff could perform medium work (A.R. 85, 90; see also A.R. 281-85 (October 21, 2011 Orthopedic Consultation)). Drs. May and Rahman did not indicate what weight they may have assigned to the consultative examiner's opinion (A.R. 76). The ALJ gave "less weight" to the consultative examiner's opinion, stating that there were limited records for the examiner to review, and also stating that the examiner's opinion was inconsistent with the opinions of the State agency physicians and Dr. Steiger (A.R. 22).

assertedly viewed Dr. Steiger's findings in comparison with these agency physicians' findings initially and on reconsideration. In Dr. Scott's medical record review, the only mention of Plaintiff using a cane came from a reference to Dr. Zardouz's report (A.R. 88 (referencing A.R. 351 wherein Dr. Zardouz mentions that Plaintiff ambulates with a cane)).

It appears that the ALJ implicitly rejected Dr. Steiger's opinion that Plaintiff requires a cane for ambulation and/or support due to Plaintiff's right lower extremity weakness. In the ALJ's decision, the ALJ did acknowledge that Plaintiff uses a cane (A.R. 18 (referencing Plaintiff's hearing testimony at A.R. 42-43 and Dr. Steiger's prescription at A.R. 324)). Yet, the ALJ failed to include in the assessment of Plaintiff's residual functional capacity any limitation concerning Plaintiff's alleged need to use a cane (A.R. 15). The ALJ did appear to acknowledge certain other limitations Dr. Steiger had suggested, but rejected those limitations in favor of the limitations found by the non-examining State agency physicians (A.R. 22 (adopting opinions at A.R. 75-79, 87-96)).[5]

---

[5] The record is not clear regarding whether the ALJ, or the vocational expert on whom the ALJ relied, adequately considered Plaintiff's alleged need to use a cane. During the administrative hearing, the ALJ stated that he would have to interpret the limitations Dr. Steiger assigned in the worker's compensation context – <u>which (as summarized) did not mention use of a cane</u> – into abilities for this case and asked the vocational expert to help (A.R. 64-66). Unlike the State agency physicians, the vocational expert opined that Dr. Steiger's limitations "would clearly be met by a light work [] profile. . . . [B]ut it would require a job with sitting or standing, which seems [] of short term duration" – <u>i.e.</u>, a "sit/stand" option (A.R. 65-66). The vocational expert's opinion that Plaintiff needed a sit/stand
(continued...)

The use of a "medically required hand-held assistive device" (such as a cane) may "significantly erode" the occupational base for an individual who must use such a device. See Social Security Ruling 96-9p at *7. In this case, the ALJ should have inquired into and expressly evaluated the medical necessity and vocational consequences of Plaintiff's use of a cane. See id. ("To find that a hand-held assistive device is medically required, there must be a medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."). If Plaintiff has a genuine medical need for a cane, a related limitation also should have been included in any hypothetical questioning of the vocational expert. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant[.]") (emphasis in original).

At a minimum, the ALJ should have inquired of Dr. Steiger and the vocational expert regarding whether Dr. Steiger's worker's compensation restrictions accounted for Plaintiff's use of a cane, and how those restrictions would translate into an assessment of Plaintiff's residual functional capacity. "The ALJ has a special duty

---

[5](...continued)
option does not address whether Plaintiff would require a cane for ambulation or support. The ALJ rejected the vocational expert's translation of Dr. Steiger's opinion to the extent it necessitated a sit/stand option. See A.R. 22 (giving "less weight" to the sit/stand option because of inter alia the subjective nature of Plaintiff's complaints).

to fully and fairly develop the record and to assure that the claimant's interests are considered.  This duty exists even when the claimant is represented by counsel."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); accord Garcia v. Commissioner, 768 F.3d 925, 930 (9th Cir. 2014); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (while it is a claimant's duty to provide the evidence to be used in making a residual functional capacity determination, "the ALJ should not be a mere umpire during disability proceedings") (citations and internal quotations omitted); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.  He could also have continued the hearing to augment the record") (citations omitted).

    The Court is unable to find that the ALJ's errors in failing properly to address Plaintiff's use of a cane were harmless.  The residual functional capacity the ALJ adopted did not include the use of a cane.  The vocational expert gave no testimony regarding whether the jobs identified for Plaintiff could be performed if Plaintiff required the use of a cane.  See A.R. 63-67.  The vocational expert did testify that if a person were limited to light work with a sit/stand option (which the vocational expert derived from Dr.

1  Steiger's worker's compensation limitations, see Footnote 5), the
2  person could perform work as a marker, production line assembler, and
3  electronic worker (A.R. 64-67).  The sit/stand option itself
4  apparently would erode the labor market by "at least" 50 percent for
5  each of these jobs.  See A.R. 64-67.  The vocational effect of a cane
6  restriction may vary as to each function an individual can perform –
7  it may limit standing, walking, lifting, carrying, pushing or pulling.
8  See Worley v. Colvin, 2014 WL 103777, at *5 (D. Colo. Jan. 10, 2014)
9  (noting same; "[b]ecause the ALJ failed to inquire as to the effect of
10 the cane on each area of function, the Court is without an adequate
11 record to conclude that any particular job . . . can be performed
12 subject to the limitation").  Vocational experts in other cases have
13 testified inconsistently regarding whether a person needing a cane
14 could work as a marker, production line assembler, or electronics
15 worker.  See, e.g., Henderson v. Colvin, 2014 WL 6982324, at *5 (N.D.
16 Ohio Dec. 9, 2014) (vocational expert opined that person who required
17 sit/stand option and use of cane for ambulating distances could
18 perform an electronics worker job); Kimball v. Colvin, 2014 WL
19 6680533, at *1 (W.D. Mo. Nov. 25, 2014) (vocational expert opined that
20 production assembler job would permit a sit/stand option and the use
21 of a handheld assistive device for uneven terrain and prolonged
22 ambulation); Hoy v. Colvin, 2014 WL 4105304, at *4 (M.D. Pa. Aug. 20,
23 2014) (vocational expert opined that the use of a cane when standing
24 would preclude production assembler work); McNeill v. Colvin, 2014 WL
25 4062502, at *5 (E.D. N.C. July 14, 2014), adopted, 2014 WL 4062648
26 (E.D. N.C. Aug. 14, 2014) (vocational expert opined that use of a
27 walking cane or a sit/stand option would not affect ability to perform
28 electronics worker job); Biestek v. Commissioner, 2014 WL 3778262, at

*5 (E.D. Mich. July 31, 2014) (vocational expert testified that the electronics worker job would permit use of a cane for ambulation but not use of a cane for balancing); Tucker v. Commissioner, 2014 WL 3615493, at *2 (E.D. Cal. July 21, 2014) (where expert had identified the light electronics worker job as one the hypothetical person could perform, vocational expert opined that someone who used a cane for standing and walking could possibly perform work at the sedentary level); Pascente v. Colvin, 2014 WL 1775821, at *5 (N.D. Ill. May 5, 2014) (vocational expert opined that marker job would be available to person who needed a cane to walk, but production assembler job would be unavailable); Jackson-Young v. Colvin, 2014 WL 1599467, at *3 (N.D. Cal. April 21, 2014) (vocational expert opined that use of cane would preclude production assembler job); Romero v. Colvin, 2014 WL 585348, at *4 (C.D. Cal. Feb. 13, 2014) (vocational expert opined that person who "could use a cane as necessary for ambulation" could work as an electronics worker); Bell v. Colvin, 2014 WL 324756, at *6 (N.D. Cal. Jan. 29, 2014) (where vocational expert had identified production assembler job as one a person could perform, vocational expert opined that if the individual could not use the hand with the cane for work, such restriction would preclude all jobs because the person would be a one-armed worker while standing); Thomas v. Colvin, 2013 WL 5322819, at *26 (W.D. Mo. Sept. 21, 2013) (where vocational expert had identified production assembler as job person could perform, if the person needed to use a cane in the dominant hand for walking but not standing still, the expert found no preclusion, explaining: "I guess as long as the individual doesn't have to actually work or use that hand for an entirety of the work"); Dowdy v. Astrue, 2013 WL 395039, at *7 (C.D. Cal. Jan. 31, 2013) (vocational expert opined that the use

of a cane when standing or walking would erode electronics worker job by 50 percent); Passafiume v. Commissioner, 2012 WL 5611501, at *5 (N.D. Ohio Nov. 15, 2012) (vocational expert opined that person who needed cane to ambulate nevertheless could work as an electronics worker); Hayes v. Commissioner, 2012 WL 4442412, at *8 (N.D. Tex. July 30, 2012), adopted, 2012 WL 4442411 (N.D. Tex. Sept. 26, 2012) (vocational expert opined that if a person had to use a cane for ambulation and could not lift or carry with that hand during standing and walking, that person could not work as a marker; response was based on experience and not the Dictionary of Occupational Titles because DOT does not address the use of cane for ambulation in any of its job descriptions); Carter v. Astrue, 886 F. Supp. 2d 1093, 1113-14 (N.D. Iowa Aug. 20, 2012) (vocational expert opined that the need for a cane for support would preclude production assembler job because it would occupy one hand); Mooney v. Commissioner, 2012 WL 2150855, at *13 (C.D. Cal. June 12, 2012) (vocational expert opined that electronics worker job could be performed if a person needed a cane to walk but not to stand); White v. Astrue, 2011 WL 5373971, at *8 (N.D. Ill. Nov. 7, 2011) (vocational expert opined that if a person were required to use a cane in the dominant hand it would preclude jobs as an electronics worker, production assembler, and any other jobs at the light level); Dalke v. Astrue, 2011 WL 2433457, at *3 (June 14, 2011) (where residual functional capacity allowed for use of a cane "as needed," vocational expert opined that person could perform an

///
///
///
///

electronics worker job).⁶  Accordingly, the ALJ's errors cannot be deemed harmless.  See Garcia v. Commissioner, 768 F.3d at 932-34 (a failure to develop the record is not harmless unless it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination"; citing Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008)); see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

**II. Remand is Appropriate.**

Under the circumstances of this case, remand is appropriate.  See Treichler v. Commissioner, 2014 WL 7332774, at *8 n.5, *11 (9th Cir. Dec. 24, 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain or ambiguous, the proper approach is to

---

⁶ Even if the vocational experts who testified in these other cases were in agreement (and they are not), this Court probably would be unable to rely on any such agreement.  It is generally improper to rely on factual information outside the record.  See Burkhart v. Bowen, 856 F.2d 1335, 1341 (9th Cir. 1988) (vocational conclusions reached by ALJ without input of vocational expert represents an improper reliance on factual information outside the record, deprives the claimant of an opportunity to cross-examine or rebut, and lacks sufficient evidentiary support to constitute substantial evidence); see also M/V American Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a cause before it."); Hansen v. Astrue, 2011 WL 3511474, at *4 (E.D. Wash. Aug. 11, 2011) (ALJ erred in relying on vocational expert testimony from other cases).

1  remand the case to the agency"; remand for further administrative
2  proceedings is the proper remedy "in all but the rarest cases"); see
3  also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an
4  administrative determination, the proper course is remand for
5  additional agency investigation or explanation, except in rare
6  circumstances); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)
7  (court will credit-as-true medical opinion evidence only where, inter
8  alia, "the record has been fully developed and further administrative
9  proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d
10 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand
11 for further proceedings rather than for the immediate payment of
12 benefits is appropriate where there are "sufficient unanswered
13 questions in the record").
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all of the foregoing reasons,[7] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 26, 2015.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.

16